# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0957

PAUL W. HYATT, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 20, 2007[1]                                  Decided    August 6, 2007  )

*Nanci Foti*, with whom *David J. Rose* and *Daniel Krasnegor*, all of Washington, D.C., were on the pleadings for the appellant.

*Angela Cross Green*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleading for the appellee.

Before KASOLD, HAGEL, and LANCE, *Judges*.

KASOLD, *Judge*: Veteran Paul W. Hyatt appeals through counsel an April 26, 2004, decision of the Board of Veterans' Appeals (Board) that denied his claim for disability compensation for a lumbar spine disability because it found that his disability was not service connected.  For the reasons set forth below, the decision of the Board that the Secretary complied with his duty to assist will be reversed, the decision will otherwise be set aside, and the matter will be remanded for further adjudication.

## I. BACKGROUND AND ARGUMENTS

Mr. Hyatt served in the U.S. Marine Corps from December 1958 to September 1962.  In 1959, he suffered a stab wound to his lower back when a member of his military unit negligently

---

[1]  The Court expresses its appreciation to Duquesne University School of Law in Pittsburgh, Pennsylvania, for hosting oral argument in this case.

struck Mr. Hyatt in the back with a bayonet while the unit was participating in a ceremony at the Tomb of the Unknowns at Arlington National Cemetery. Evidence contained in the claims file indicates that the service member causing the injury to Mr. Hyatt was disciplined for his conduct by a court-martial. Following discharge from the service, Mr. Hyatt began to experience lower-back pain after tripping and falling while helping to move a large copier down a flight of stairs, which caused an injury requiring surgery in 1974 and 1975. R. at 132.

In 1983, Mr. Hyatt filed a claim for disability compensation benefits for his lower-back condition. The application form included the names of physicians who saw him at the "Mid Maine Med. Ctr.; Waterville, Me." between December 1973 and July 1975, to include "Dr. Pep[e]/Dr. Rodriguez," as well as his authorization for the release of information. R. at 67-68. Mr. Hyatt also submitted lay statements from various people describing the circumstances surrounding his in-service back injury from being struck by a bayonet. Those statements included the name of the person responsible for inflicting the injury and indicated that he had been court-martialed; however, the court-martial records were never submitted to or sought by the Secretary. Records of the 1974 surgery also were not submitted to or sought by the Secretary, although records from the 1975 surgery, which are in the record, refer to the 1974 surgery and provide the name of the treating physician as well as the private hospital where the surgery was performed. *See* Record (R.) at 132. An October 27, 1983, VA examination report notes that the "bayonet wound scar is not visualized, it is incorporated into the surgical scar" and further notes that there was "no relationship to the present spinal problem." R. at 97. In December 1983 Mr. Hyatt's claim was denied by a VA regional office (RO). Mr. Hyatt did not appeal that determination.

Based on the submission of new and material evidence, Mr. Hyatt's claim was reopened in 1998, but his claim was denied on the merits. At a hearing conducted during the administrative appeal process, Mr. Hyatt suggested through counsel that the Board "retrieve the court-martial records for the young man that stabbed Mr. Hyatt" and identified that person by name. R. at 545. The records were not obtained. Further, in response to the Board's inquiry whether the pre-1975 medical records were available, Mr. Hyatt stated that he was unable to obtain those records from the hospital because of their age. The Board in the decision on appeal found that the stabbing incident had occurred and Mr. Hyatt had a current back disability, but further found that there was no nexus

between his in-service wound and his current disability because, inter alia, it also found that there was no "medical, or consistent lay evidence, of the nature and extent of [the bayonet] wound." R. at 18.

Mr. Hyatt argues, inter alia, that the Secretary failed to meet his duty pursuant to 38 U.S.C. § 5103A to assist during the adjudication of the 1983 claim because the Secretary failed to obtain the court-martial records and the records from his 1974 surgery, and that the Secretary's duty to obtain these records was revived when the claim was reopened. Mr. Hyatt further argues that the court-martial and the 1974 surgery records are relevant to his claim because they likely could shed light on the nature and extent of the bayonet wound, evidence of which the Board explicitly found lacking.

The Secretary argues that when there is a duty-to-assist violation in a decision that has become final, the duty is not revived upon the reopening of a claim, although he concedes that, once reopened, the claim must be processed based on the entire claims file and a duty to assist may arise from this composite record. In this instance, the Secretary argues that he did not have a duty to assist in obtaining the court-martial records because Mr. Hyatt did not identify them or request them during the pendency and adjudication of the 1998 claim. The Secretary also contends that these records are irrelevant because they could show only the occurrence of the injury in service, but no nexus between service and Mr. Hyatt's current back disability. The Secretary further argues that for the same reason the 1974 surgery records are not relevant. The Secretary lastly argues that the Board's decision should be affirmed because there is a plausible basis in the medical evidence in the record on appeal and the decision is thus not clearly erroneous.

In response to inquiry at oral argument regarding how the relevance of documents not yet obtained might be established, Mr. Hyatt suggested that any indication of relevance is sufficient to give rise to the Secretary's duty to assist for those records that are identified adequately by the claimant. The Secretary suggested that the claimant must make a renewed request for the Secretary to obtain the documents and make a proffer as to the relevance thereof.

3

## II. DISCUSSION

### A. Statutory Duty To Assist Claimants in Obtaining Records

The Secretary is required to make reasonable efforts to assist a claimant in obtaining the evidence and information necessary to substantiate the claim unless no reasonable possibility exists that such assistance would aid in substantiating the claim. *See* 38 U.S.C. § 5103A(a)(1)-(2). This assistance includes making reasonable efforts to obtain relevant public or private records that are identified adequately to the Secretary and that the claimant authorizes the Secretary to obtain. *See* 38 U.S.C. § 5103A(b)(1). In claims for disability compensation, such as is the case here, all of the veteran's relevant service medical records (SMRs) must be obtained. *See* 38 U.S.C. § 5103A(c)(1). However, records of relevant VA-provided or VA-paid-for medical treatment and other relevant records pertaining to a claimant's service and maintained by a governmental entity must be obtained only if the claimant provides sufficient information to the Secretary to enable him to locate those records. *See* 38 U.S.C. § 5103A(c)(1)-(2). Similarly, the Secretary is obligated to attempt to obtain any other relevant records held by a Federal department or agency that the claimant adequately identifies and authorizes the Secretary to obtain. *See* 38 U.S.C. § 5103A(c)(3). The Secretary's efforts to obtain Federal records must continue until the records are obtained or until it is reasonably certain that the records do not exist or that further efforts to obtain the documents would be futile. *See* 38 U.S.C. § 5103A(b)(3). Moreover, in all instances, if after reasonable efforts the Secretary is unable to obtain the relevant records he attempted to obtain, he must so notify the claimant and include in that notice identification of the records sought, an explanation of the efforts expended, and a description of what further action the Secretary will take on the claim. *See* 38 U.S.C. § 5103A(b)(2).

### 1. Interpretation of "Relevant"

In all cases, the Secretary's duty to obtain records is limited to obtaining relevant records. *See* 38 U.S.C. 5103A(b)(1). However, the statute does not itself contain a definition of "relevant." Nonetheless, in the context of the pre-2000 duty to assist, the Court adopted the definition of "relevant evidence" contained within Rule 401 of the Federal Rules of Evidence, to wit: defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

4

without the evidence." *See Klekar v. West*, 12 Vet.App. 503, 508 (1999); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("[w]e generally presume that Congress is knowledgeable about existing law pertinent to legislation it enacts").  We see no reason to depart from this.

In the context of the duty to assist in obtaining records, the relevance of the documents cannot be known with certainty before they are obtained.  Hence, the Court previously has held with regard to the pre-2000 duty to assist that the duty applies to potentially relevant documents.  *See Talley v. Brown*, 6 Vet.App. 72, 74 (1993) (holding that duty to assist was breached because RO failed to secure records that were potentially relevant); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593-94 (1991) (noting duty to assist requires effort to secure records that are potentially relevant or explanation for failure to do so).  Again, we see no basis for departing from this standard when considering the current duty to assist under section 5103A.

## 2. Adequate-Identification Requirement

As noted above, with the exception of SMRs relevant to a disability compensation claim, the Secretary's duty to obtain other records is more limited.  Relevant records of VA-provided or VA-paid-for medical treatment and relevant records pertaining to the claimant's service and maintained by a governmental entity are required to be obtained when they have been identified adequately.  Relevant private records and other relevant records held by a Federal agency are to be obtained if they are identified adequately and the claimant provides authorization to obtain them.  The level of specificity required to identify adequately such records sufficient to give rise to a duty for the Secretary to undertake reasonable efforts to secure them is not prescribed in statute or regulation, other than by the implicit factors that such identification must be sufficient to indicate the relevance of the records and to permit the Secretary to undertake reasonable efforts to secure the them.  *See* 38 U.S.C. § 5103A(b)-(c).  Nonetheless, other than for SMRs, it is clear that it is ultimately the claimant's responsibility to provide the information necessary to locate and secure other relevant records.  *See* 38 U.S.C. § 5107(a) (except as otherwise provided by law, claimant has responsibility to present and support claim); *Kowalski v. Nicholson*, 19 Vet.App. 171, 180 (2005); *Loving v. Nicholson*, 19 Vet.App. 96, 103 (2005) (finding no error under section 5103A for Secretary's failure to obtain records that the claimant had not identified); *see also Hilkert v. West*,

12 Vet.App. 145, 151 (1999) (en banc) ("The Secretary's duty to assist does not encompass 'a duty to prove a claim with the claimant only in a passive role.'" (quoting *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992))).

### B. Burden of Demonstrating Error

Appellants before the Court bear the burden of demonstrating error below. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (burden on appellant to plead with some particularity the allegation of error); *Hilkert*, 12 Vet.App. at 151 (appellant has burden of demonstrating error). Moreover, the Board's findings with regard to whether the Secretary has satisfied his duty to assist, to include obtaining relevant records, are reviewed by the Court under the "clearly erroneous" standard of review. *See Nolen v. Gober*, 14 Vet.App. 183, 184 (2000) (Board's determination whether Secretary has fulfilled his duty to assist reviewed under "clearly erroneous" standard).

### C. Application to this Case–Court-Martial Records

We agree with Mr. Hyatt that he adequately identified the court-martial records of the service member responsible for Mr. Hyatt's injury during the proceedings below. The service member causing the injury and his unit had been identified in previously submitted lay statements, and the probable timeframe of the court-martial was apparent from the circumstances. In all, there was sufficient information to make a credible request for these records or a request for assistance in obtaining the records from the Department of Defense. Moreover, because court-martial records and individual records of military service are records held by the Federal Government and are generally public in nature, *see United States v. Hershey*, 20 M.J. 433, 435-36 (1985), Mr. Hyatt's specific authorization to obtain them was unnecessary as a matter of law.

We also agree with Mr. Hyatt that the records are potentially relevant. Although the Secretary argues that the court-martial records are not relevant because the Board did not dispute the fact that Mr. Hyatt had been injured in service, his argument is misplaced. In significant part, the Board rested its decision that there was no nexus between Mr. Hyatt's current disability and his injury in service on its finding that there was "no medical, or consistent lay evidence, of the *nature and extent* of" the wound to Mr. Hyatt's back that he suffered in service. R. at 18 (emphasis added). Those dealing with veterans' claims should understand that a court-martial involving an injury to another serviceman likely would contain evidence regarding the extent and nature of the injury for

6

purposes of aggravation and mitigation. *See*, *e.g.*, *Manual for Courts-Martial, United States* (2005 ed.), pt. II, Rules 303 (preliminary investigation), 405 (pretrial investigation), 916 (defenses), and 1001 (sentencing). Thus, in this instance, the court-martial records potentially contain evidence relevant to the nature and extent of Mr. Hyatt's wound, evidence that the Board explicitly found to be important to a decision on the claim. Under these circumstances, the Secretary had a duty to attempt to secure the court-martial records and, if unsuccessful in doing so, to provide Mr. Hyatt with the specific notice required by section 5103A(a)(2). Based on the record viewed in its entirety, the Court is left with a definite and firm conviction that the Board erred in its finding that the duty to assist had been fulfilled, and therefore we hold that this finding is clearly erroneous. *See Nolen*, 14 Vet.App. at 184; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (Board's findings of fact may not be reversed unless, viewing the record in its entirety, the Court "'is left with a definite and firm conviction that a mistake has been committed'" (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### D. Application to this Case–1974 Surgery Records

During the adjudication of his 1983 claim, Mr. Hyatt identified the surgical records from 1974 and authorized the Secretary to gather them, but the Secretary did not obtain them. Mr. Hyatt argues that the reopening of his claim gave automatic rise to a duty in the Secretary to secure documents not obtained prior to the denial of his claim in the first instance.

### 1. Scope of Duty To Assist Upon Reopening

It is well settled that when the Secretary fails in his duty to assist by not securing documents that should have been obtained and renders a decision that becomes final without correction of that failure, such failure does not form the basis for reversing the decision based on clear and unmistakable error (CUE). *See Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) (stating that the failure in duty to assist cannot form basis for CUE). It is also well settled that, with few exceptions not pertinent here, a claim to reopen is a separate claim to which the duty to assist does not apply unless and until the claim is reopened. *See Paralyzed Veterans of Am. v. Sec'y Veterans Affairs*, 345 F.3d 1334, 1342-43 (Fed. Cir. 2003) ("[I]n the absence of new and material evidence, VA is not required to provide assistance to a claimant attempting to reopen a previously disallowed claim, including providing a medical examination or obtaining a medical opinion."). Once a claim

is reopened, however, the duty to assist fully attaches. *Id*. Moreover, a reopened claim is to be decided on the totality of the file, including everything considered at the time of the first decision. *See Mercado-Martinez v. West*, 11 Vet.App. 415, 418 (1998) (when new and material evidence is submitted, "the Board must reopen the claim and 'review all of the evidence of record to determine the outcome of the claim on the merits'" (quoting *Evans v. Brown*, 9 Vet.App. 273, 282-83 (1996))).

Although there is certain superficial logic to Mr. Hyatt's argument that the reopening of his claim gave automatic rise to a duty in the Secretary to secure documents not obtained prior to the denial of his claim in the first instance, this ignores the fact that documents relevant to the first proceeding may no longer be relevant to the second proceeding. For example, evidence with regard to the incurrence of a disease or injury while in service is not relevant to a reopened claim when, in the original claim, the Secretary found that the disease or injury had occurred in service, but denied the claim for lack of a current disability. *Cf. Kent v. Nicholson*, 20 Vet.App. 1, 10 (2006) (in the context of complying with 38 U.S.C. § 5103(a), the Secretary upon receipt of a claim to reopen a previously denied claim must "look at the bases for the denial in the prior decision and . . . [provide] a notice letter that describes what evidence would be necessary to substantiate that element or elements required to establish service connection that were found insufficient in the previous denial"). Inasmuch as the duty to assist in obtaining records arises only as to potentially relevant records, there would be no duty to secure the earlier medical records in the given example. Conversely, during an initial claim a claimant may identify and authorize the release of records that are not potentially relevant at that time. Even if the Secretary is not required to obtain them at that time, the records may become potentially relevant after the claim has been reopened if the addition of new evidence changes the issues in contention.

Accordingly, we reject Mr. Hyatt's argument that when a disability compensation claim is reopened the Secretary has an automatic duty to secure those documents that were adequately identified but not secured before the claim was initially denied. Rather, consistent with our caselaw, *see Mercado-Martinez*, *supra*, we agree with the Secretary that a reopened disability-compensation claim must be processed based on the entire claims file and that the Secretary has a duty to attempt to obtain all potentially relevant SMRs and those other potentially relevant records that the claimant adequately identifies and authorizes the Secretary to obtain. Although the correction of past errors

8

may result from a reexamination of the entire file after a claim is reopened, assessment of the new and material evidence in the context of the entire claim and not the correction of previous errors is the purpose for reopening a claim. *Id.*

### 2. Duty To Obtain the 1974 Surgery Records Upon Reopening

We agree with Mr. Hyatt that the 1974 surgery records were adequately identified and potentially relevant. Mr. Hyatt named Dr. Pepe as an attending physician in his September 1983 application[2] and provided a signed authorization for the release of information.[3] In general, when a veteran claims compensation for a current condition and lists on his application the names of private physicians that provided treatment for that condition, that is sufficient to establish the relevance of the treatment he received and to adequately identify the medical records of those physicians. The Secretary then has the obligation to seek other identifying information needed to secure the records. *See* VA Adjudication Procedure Manual M21-1, pt. III, ch. 1, § 1.02(d) (requiring the Secretary to request identifying information for records and to seek medical release, if necessary).

Although the Secretary contends on appeal that the February 1974 surgery records are not relevant because they could not show a nexus between Mr. Hyatt's current disability and his service, his argument is not supported by the record. As previously stated, the Board specifically found that there was insufficient evidence in the record from which to determine the nature and extent of Mr. Hyatt's in-service injury. Given the 1983 VA examination report noting the incorporation of the bayonet wound scar into the surgery scar, it is reasonably apparent on its face that the February 1974 surgery records may provide evidence regarding the nature and extent of that injury as it existed prior to that surgery.

---

[2] The February 1974 surgery performed by Dr. Pepe also is explicitly mentioned in a 1975 report that was obtained by the Secretary. R. at 132.

[3] Although it is questionable whether the 1983 release continued to be valid during the adjudication of the 1998 claim, the Secretary is obligated to seek reauthorization if necessary to secure otherwise adequately identified, relevant medical records. *See* VA Adjudication Procedure Manual M21-1, pt. III, ch. 1, § 1.02(d) (requiring the Secretary to request identifying information for records and to seek medical release, if necessary); *see also* 38 U.S.C. § 5103A(b)(1); 38 C.F.R. § 3.159(c)(1) (2006) (Secretary must make "reasonable efforts" to assist a claimant in obtaining private records, to include additional requests for information if "VA receives information showing that subsequent requests to this or another custodian could result in obtaining the records sought").

Nevertheless, under the unique facts of this case, we do not find that the Secretary erred by not attempting to obtain the February 1974 surgical records because the Secretary's obligation to secure records is limited to reasonable efforts, *see* 38 U.S.C. § 5103A(b) (Secretary is required to make "reasonable efforts" to secure records); *Canlas v. Nicholson*, __ Vet.App. __, __, No. 04-1769, 2007 WL 1742871, at *4 (June 15, 2007) (same), and, in this case, the records were not available because of their age, as reported by Mr. Hyatt. "Under these circumstances, the Court cannot find a breach of the duty to assist [by failing to obtain records] where [the] appellant acknowledges their unavailability." *Counts v. Brown*, 6 Vet.App. 473, 477 (1994).[4]

## E. Other Issues

The other issues raised by Mr. Hyatt and noted at the outset of this order are interrelated with the issues discussed previously in this opinion, and they are better addressed by the Board on remand in the first instance, *see Best v. Principi*, 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."), or rendered moot by the remand for the reasons stated above, *see Dunn v. West*, 11 Vet.App. 462, 467 (1998) (remand of appellant's claim under one theory moots the remaining theories advanced on appeal). On remand, Mr. Hyatt may present any additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

---

[4] Of course, in light of the need to remand this matter for other reasons as stated, nothing precludes Mr. Hyatt from demonstrating that the 1974 records might be archived or are otherwise reasonably available, *see Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (additional evidence and argument may be presented in support of the matter remanded), or asking for assistance from the Secretary in ascertaining if they are archived or otherwise reasonably available, *see Kowalski v. Nicholson,* 19 Vet.App. 171, 180 (2005) (citing *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) ("The duty to assist is not always a one-way street.")); *see also* 38 U.S.C. § 5103A(a)-(c), (g) (addressing Secretary's duty to assist in obtaining records and overall authority to provide assistance he considers appropriate).

### III. CONCLUSION

Upon consideration of the foregoing, the finding of the Board in its April 24, 2004, decision that the Secretary had fulfilled his duty to assist is REVERSED, and the decision is otherwise SET ASIDE, and the matter is REMANDED for further adjudication consistent with this opinion.